Filed 10/30/15  P. v. Lee CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,  Plaintiff and Respondent,  v.  FRANK WILLIAM LEE,  Defendant and Appellant. | D066915  (Super. Ct. No. SCD253345) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy R. Walsh, Judge.  Affirmed as modified.

Alissa Bjerkhoel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Frank William Lee used stolen credit cards to make purchases and pled guilty to seven counts each of burglary and petty theft.  The trial court

sentenced defendant to two years of incarceration in county jail followed by two years of mandatory supervision by a probation officer. Defendant claims that conditions of his mandatory supervision requiring him to obtain approval from his probation officer regarding residence and employment; participate in assessment programs if directed by his probation officer; and complete a residential treatment program if directed by his probation officer are all unconstitutionally vague and overbroad. Defendant also claims that part of his sentence arising from his convictions for petty theft should be stayed under Penal Code section 654, which bars multiple punishments arising out of the same act.

Defendant's primary claims arise out of apparent drafting errors. The trial court clearly wished to grant the probation officer the authority to enforce compliance with programs designed to help defendant rehabilitate and to keep defendant away from negative influences that would likely hinder his rehabilitation. However, some of the contested conditions are so broadly worded that they could require defendant to obey directives from his probation officer that are unrelated to defendant's rehabilitation or the prevention of future crimes. With respect to the conditions of mandatory supervision, we modify those conditions so that they expressly relate to the underlying conditions which led to defendant's convictions. As modified, the conditions are constitutional. We also modify the trial court judgment so that defendant's sentence arising out of the petty theft charges is stayed under Penal Code section 654. As modified, we affirm.

FACTUAL AND PROCEDURAL OVERVIEW

Accomplices of defendant stole cash and credit cards from lockers at a spa.

2

Defendant then used the stolen credit cards to make purchases on seven separate occasions, each time entering an establishment to make the purchase. In July 2014, defendant pled guilty to seven counts of burglary, seven counts of misdemeanor petty theft, and one count of receiving stolen property.[1] The trial court sentenced defendant to four years, the first two to be spent in county jail, the remaining two under mandatory supervision.[2] The trial court imposed several conditions on defendant's mandatory supervision.

An assessment performed by the probation department found that defendant needs help in becoming more aware of the feelings and rights of others, avoiding association with other high risk persons, and advancing his education and vocational training. Defendant has acknowledged having a drug addiction.

Defendant did not make any objection to the terms of mandatory supervision at the sentencing hearing.

DISCUSSION

I

Defendant challenges three of the conditions of the mandatory supervision imposed by the trial court: the requirement defendant's residence and employment be

---

[1]     Pen. Code, § 459 (burglary) [Counts 1, 3, 5, 7, 9, 11, 13]; Pen. Code, § 484g, subd. (a) (petty theft) [Counts 2, 4, 6, 8, 10, 12, 14]; Pen. Code, § 496, subd. (b) (receiving stolen property) [Count 15].

[2]     Count 1: two years; Count 2: time served; Count 3: eight months consecutive; Count 4: time served; Count 5: eight months consecutive; Count 6: time served; Count 7: eight months consecutive; Count 8: time served; Count 9: two years concurrent; Count 10: time served; Count 11: two years concurrent; Count 12: time served; Count 13: two years concurrent; Count 14: time served; Count 15: two years concurrent.

3

approved by his probation officer; the requirement defendant participate and comply with any assessment program ordered by the probation officer; and the requirement defendant complete a residential treatment program if so instructed by his probation officer. He argues these conditions are unconstitutionally vague and overbroad.

A. Relevant Legal Background

Under the Criminal Justice Realignment Act, courts may now sentence certain defendants convicted of felonies to serve their sentence in county jail rather than prison. (Pen. Code, § 1170, subd. (h).) This act also allows courts to split a sentence, having the defendant serve half in county jail and the other half under the mandatory supervision of a probation officer. (*Id.*, subd. (h)(5).) The standard in judging the validity and constitutionality of mandatory supervision conditions is the same as parole or probation. (*People v. Martinez* (2014) 226 Cal.App.4th 759, 762-764.)

Normally, challenges to probation conditions cannot be raised on appeal if no objection was raised at the sentencing hearing. (*People v. Welch* (1993) 5 Cal.4th 228, 234-235.) An exception exists for facial challenges to the constitutionality of conditions that can be resolved without examining the sentencing record. (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.) Defendant contends the conditions he challenges are unconstitutionally vague and overbroad and his claims do not rest upon any facts that are in dispute or were not developed during the trial. Therefore, defendant's claims are subject to our review.

Probation conditions are usually reviewed for abuse of discretion, but the facial constitutionality of a probation condition is subject to de novo review. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121; *People v. Mendez* (2013) 221 Cal.App.4th 1167,

1172.) Though we are adjudicating a question of law rather than fact, our analyses may take into account undisputed facts from the record. (See *Hale v. Morgan* (1978) 22 Cal.3d 388, 394.)

Burdening a constitutional liberty does not in and of itself render a condition unconstitutional. "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." (*United States v. Knights* (2001) 534 U.S. 112, 119.) Probation is a privilege and not a right, and "adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights—as, for example, when they agree to warrantless search conditions. [Citations.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 384 (*Olguin*).)

Nonetheless, when a condition burdens a constitutional right, it must be narrowly tailored and reasonably related to state interests in rehabilitation and public safety. (*In re Luis F.* (2009) 177 Cal.App.4th 176, 189.) "If available alternative means exist which are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used." (*In re White* (1979) 97 Cal.App.3d 141, 150.)

Moreover, "[a]n order must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." (*People v. Reinertson* (1986) 178 Cal.App.3d 320, 324-325.) A condition is unconstitutional if it is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "[A] law that is 'void for vagueness' . . . also 'impermissibly delegates basic

5

policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116.)

Though a court cannot delegate its judicial authority to the probation department, probation officers do enjoy broad discretion in carrying out court orders. (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372-1373.) The probation department is vested with the power to "set the time and place for administration" of court-ordered probation conditions. (*People v. Kwizera* (2000) 78 Cal.App.4th 1238, 1240 (*Kwizera*).) Our state high court has cited with approval a probation condition which required a probationer " ' "follow such course of conduct as the probation officer prescribes" ' as reasonable and necessary to enable the probation department to supervise compliance with specific conditions of probation." (*Olguin*, *supra*, 45 Cal.4th at p. 381, citing *Kwizera*, *supra*, 78 Cal.App.4th at p. 1240.)

However, conditions worded so that the probation officer has "unfettered" or "entirely open-ended" discretion to interfere with a constitutionally protected liberty will usually be found overbroad. (*People v. Leon* (2010) 181 Cal.App.4th 943, 953; *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358-1359 (*O'Neil*).) For example, a condition prohibiting a probationer from associating with anyone designated by his probation officer was found overbroad as the condition gave the probation officer unlimited discretion to decide with whom the probationer would be allowed to associate with. (*O'Neil*, at pp. 1357-1358.) An implicit expectation that the probation officer would use his discretion reasonably did not save the condition from being unconstitutionally overbroad. "The court's order does not identify the class of persons with whom defendant

6

may not associate nor does it provide any guideline as to those with whom the probation department may forbid association. Without a meaningful standard, the order is too broad and it is not saved by permitting the probation department to provide the necessary specificity." (*Ibid.*) "While the court may well have anticipated that the probation officer would specify individuals known to be using or dealing in illicit drugs . . . 'this factor should not be left to implication.' " (*Id.* at p. 1358; see *Leon*, at pp. 953-954.)

### B. Analysis

#### 1. *Housing and Employment*

We first examine the constitutionality of condition 7.g., which requires defendant to obtain the probation officer's permission regarding housing and employment.[3] The federal and state Constitutions protect the right to interstate and intrastate travel, including among other things the right to live where one chooses. (*In re White*, *supra*, 97 Cal.App.3d at p. 148.) Limitations on where a probationer may live also implicate other constitutionally protected liberties, such as freedom of speech and freedom of association. (*People v. Beach* (1983) 147 Cal.App.3d 612, 622, citing *Kent v. Dulles* (1958) 357 U.S. 116, 126.) Although these rights may be abridged by the state in restricting where probationers may live (see *Morrissey v. Brewer* (1972) 408 U.S. 471, 477; *In re Schoengarth* (1967) 66 Cal.2d 295, 300; *In re Faucette* (1967) 253 Cal.App.2d 338, 341), the ability of a court to restrict where a probationer may live is not limitless. Under most circumstances, a court cannot issue a probation condition banishing a

---

[3] The question of whether a probation condition requiring a probation officer's permission regarding residence and employment is constitutionally vague or overbroad is currently before our state high court. (See *People v. Schaeffer* (2012) 208 Cal.App.4th 1, review granted Oct. 31, 2012, S205260.)

7

probationer from his home.  (See *Beach*, at pp. 622-623.)

In *People v. Bauer* (1989) 211 Cal.App.3d 937, 943-945, a condition ordering that a probationer obtain permission from his probation officer regarding his residence was found facially unconstitutional as there was nothing to indicate the probationer's living conditions contributed to his criminality, and the condition was broadly worded enough to allow the probation officer to bar the probationer from his current home or other living arrangements that would not hinder the probationer's rehabilitation.  Relying on *People v. Bauer*, another court found a probation condition granting a probation officer the power to bar a probationer from associating with anyone so designated by the officer to be unconstitutionally overbroad.  (*O'Neil*, *supra*, 165 Cal.App.4th at pp. 1357-1358.)

Defendant asserts the state has no reason to restrict his place of residence because the record does not show his home life played any role in his criminality.  However, defendant is an acknowledged drug addict and committed his crimes with the help of accomplices.  An assessment conducted by the probation department also found defendant had a high risk of recidivism if he was in the presence of other high risk individuals.  Restricting defendant's place of residence and employment fulfills legitimate state interests in fostering defendant's rehabilitation and protecting the public from further criminal activity.  Nevertheless, here the condition is written in such a manner that it grants the probation officer powers that go beyond fulfilling these specific interests.  The challenged condition does not contain any language explaining the criteria the officer is to use in deciding what residences or work places are inappropriate.  As written, defendant's probation officer could bar defendant from a living arrangement or job opportunity for inconvenience or other reasons unrelated to defendant's rehabilitation or

8

crime prevention.

The trial court may have assumed that the probation officer would only prohibit defendant from residing or working in places that would be detrimental to his rehabilitation and enhance the risk of future criminal activity, but such limiting criteria must not be left to implication if it is to save a condition from being found unconstitutionally vague and overbroad.

The People maintain that the condition is as narrowly worded as possible to fulfill its purpose. Yet, a condition stating that defendant is not to live in a residence or work in a location where he knows illicit drugs are present and is not to associate with known criminals or drug users would appear to serve the goal of preventing defendant from associating with drugs and criminals just as well as the current condition without granting seemingly unlimited authority to his probation officer regarding where defendant can live and work.

The People also argue that language from our state high court's decision in *Olguin*, *supra*, 45 Cal.4th at page 383 requires us to uphold this condition because a court-ordered condition cannot authorize a probation officer to take actions that are arbitrary. The People are reading this language much too broadly. In *Olguin*, a probationer claimed a condition requiring him to report the presence of any pets in his home to his probation officer was overbroad. (*Id.* at p. 378.) As part of his argument, the probationer claimed the probation officer might arbitrarily seize a pet while enforcing the condition. The court rejected that line of argument stating the "probation department's authority to ensure compliance with terms of probation does not authorize irrational directives." (*Id.* at p. 383.) In the context of *Olguin*, that sentence means a probation officer cannot issue

directives that are not reasonable in light of the authority granted to the officer by the court. Thus, a probation officer cannot use a condition *only* requiring the reporting of pets to arbitrarily seize an animal. This is easily distinguishable from the present case where the court-ordered condition itself seems to expressly grant unlimited discretion to a probation officer in a manner that renders the condition unconstitutionally overbroad.

We note *Olguin* cited *Kwizera*, a case concerning a condition requiring a probationer to obey directions from his probation officer. (*Olguin*, *supra*, 45 Cal.4th at p. 383; *Kwizera*, *supra*, 78 Cal.App.4th at p. 1240.) This court found the condition simply empowered the probation officer to enforce other specific conditions and did not grant him the power to issue arbitrary or capricious directives that the court itself could not order. (*Kwizera*, at pp. 1240-1241.) *Kwizera* permits a condition giving a probation officer broad enforcement power, if the condition exists to enforce other specific conditions that appropriately guide and restrict the officer's discretion. Such principles do not apply here. On its face, the challenged condition would allow the probation officer to exclude defendant from housing or employment for reasons unrelated to criminality or rehabilitation, and no other more specific probation conditions limit this power.

Thus, the condition that defendant obtain permission from his probation officer regarding his residence and employment is unconstitutionally overbroad.

2. *Assessment*

We now examine the constitutionality of the conditions requiring defendant to participate in assessment and residential treatment programs as directed by the probation officer.

10

When it comes to participation in court-ordered programs, conditions leaving the selection and scheduling of programs within the discretion of the probation officer have been upheld. "The trial court is poorly equipped to micromanage selection of a program, both because it lacks the ability to remain apprised of currently available programs and, more fundamentally, because entry into a particular program may depend on mercurial questions of timing and availability." (*People v. Penoli* (1996) 46 Cal.App.4th 298, 308 (*Penoli*); see *In re Moriah T.* (1994) 23 Cal.App.4th 1367.) Even if the court could be more specific in its order, that does not necessarily render it overbroad. (*Penoli*, at p. 308 ["Desirable as such a narrowing of the probation officer's discretion might be, however, we are not prepared at this time to hold that its absence constitutes prejudicial error"].)

As to the question of whether the probationer had constitutionally sufficient notice of what would be expected of him, the court in *Penoli* found that notice was satisfied if the probationer's trial attorney had actual knowledge of what the program ordered by the court would typically entail in terms of treatment and duration. (*Penoli*, *supra*, 46 Cal.App.4th at p. 309.) Such an order also does not have to be specific regarding how compliance with the program will be assessed since it is ultimately up to the sentencing court to determine compliance with conditions of probation, not the probation officer. (*Id.* at p. 310.)

This court has previously found that a condition ordering a probationer to participate in polygraph examinations and answer questions posed to him truthfully as part of a sex offender treatment program was constitutionally permissible. (*Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 320-321.) However, such a condition must limit the questions asked to those relevant to the probationer's rehabilitation and the crime

11

of conviction.  (*Id.* at p. 321.)

Condition 1.q. of defendant's mandatory supervision states that defendant should "[p]articipate and comply with any assessment program if directed by the P.O." Condition 1.q. does not specify what types of assessment programs the probation officer can order defendant to participate in and thus appears to convey upon the probation officer the kind of unfettered discretion that California courts have repeatedly found unconstitutionally vague and overbroad.  (See *People v Bauer*, *supra*, 211 Cal.App.3d at pp. 943-945; *O'Neil*, *supra*, 165 Cal.App.4th at pp. 1357-1358.)

The People cite to *Penoli* in arguing that Condition 1.q. is not unconstitutionally vague or overbroad, but such an argument is unavailing.  *Penoli* did permit a fair amount of discretion to be exercised by the probation officer in selecting a program, but the contested condition in *Penoli* stated that the treatment was for drug abuse.  (*Penoli*, *supra,* 46 Cal.App.4th at pp. 301-302.)  *Penoli* does not stand for the proposition that a probation officer can be given the power to order participation in a program without any guidance as to what the program is for.  Furthermore, this court's own precedent from *Brown v. Superior Court*, *supra*, 101 Cal.App.4th at pages 320-321 strongly indicates that a court-ordered condition must expressly limit the questions asked during an assessment to those relevant to defendant's crime of conviction or rehabilitation.

Thus, condition 1.q., in the absence of any language restricting the assessments to the task of assessing problems related to defendant's rehabilitation or crime of conviction, is unconstitutionally overbroad.

3.  *Residential Treatment*

We now turn to the condition requiring defendant to participate in a residential

12

treatment program, if so instructed by his probation officer. The condition is listed under Condition 6 "Drug Conditions" as Condition 6.a. Though Condition 6.a. does not state that the residential treatment program is one for drug treatment, its placement under "Drug Conditions" clearly conveys to defendant and the probation officer that the purpose of the residential treatment program is to treat drug addiction. We find this condition only allows the probation officer to order residential treatment for drug addiction and not for "sex addiction," or other conditions not supported by the record as defendant asserts in his brief.

The order seems to grant the probation officer some discretion in deciding when defendant would participate in a residential treatment program and in program selection, but precedent allows such discretion. (See *Penoli*, *supra*, 46 Cal.App.4th at p. 308.) Defendant is an admitted drug addict, thus a condition permitting the probation officer to order him to complete a residential treatment program is appropriately tailored to state interests in rehabilitation and preventing future criminal activity. The wording of the condition also gave defendant and his trial counsel fair warning that he could be ordered to participate in a residential drug treatment program during his period of mandatory supervision.

Defendant argues the condition gives inadequate notice that his liberty might be restricted by a residential treatment program. However, a significant level of control and supervision is inherent in the concept of a residential treatment program. Use of the word "residential treatment" is sufficient notice to defendant of the kind of confinement he might face. Defendant maintains the condition does not sufficiently specify how long he could be confined in a residential treatment program. As a practical matter though, the

13

court's authority to confine defendant to a residential treatment program ends at the completion of defendant's sentence. Thus, defendant had sufficient notice that he could potentially be confined to a residential treatment program for at most the remaining two years of his sentence. In sum, this condition is neither unconstitutionally vague nor overbroad.

Defendant requests that we strike the contested conditions. The People ask that we remand this case back to the trial court for further proceedings to modify the conditions in the event we find any of the conditions unconstitutional. Though we have found two of the conditions unconstitutional, we will not strike the conditions in their entirety because we find they relate to legitimate rehabilitative purposes and simply need to be more narrowly tailored. For purposes of judicial economy, we will modify the housing, employment and assessment conditions and, as modified, affirm the judgment.

II

Defendant purchased items using a stolen credit card on seven separate occasions and, for these acts, pled guilty to seven counts of burglary and seven counts of petty theft. Defendant contends his sentence for the petty theft convictions should have been stayed because both the burglary and petty theft convictions arise from the same acts. On this point, the People have conceded to defendant, but we will still conduct our own independent review of defendant's claim on the merits.

Penal Code section 654 prohibits multiple punishments for offenses rising from the same act or a series of acts constituting an indivisible course of action. (*People v. Beamon* (1973) 8 Cal.3d 625, 639-640.) In this case, each conviction of burglary and petty theft arises from the same sequence of events: defendant entering a business

14

establishment and using a stolen credit card to make purchases. All of the acts in this sequence occur close together in proximity and facilitate the same singular criminal objective of committing theft via a stolen credit card. Thus, defendant is correct and his sentence arising from the seven convictions for petty theft (the lesser of the two charges) should be stayed under Penal Code section 654.

## DISPOSITION

Condition 7.g. of the order imposing probation is modified to state that defendant: "not live in any residence or work in any location where you either know or have been told by your probation officer that illicit drugs are present; do not without your probation officer's permission work in any place of employment where you either know or have been told by your probation officer that parolees, probationers, convicts under mandatory supervision, state or federal prisoners, illicit drug users, substance abusers, or persons engaged in criminal activity are employed or otherwise routinely present; do not without your probation officer's permission live in a residence alongside any persons you either know or have been told by your probation officer are parolees, probationers, convicts under mandatory supervision, state or federal prisoners, illicit drug users, substance abusers, or persons engaged in criminal activity; with the exception of any group counseling, therapy, or treatment ordered under the conditions of your mandatory supervision, do not without your probation officer's permission associate with any persons you either know or have been told by your probation officer are parolees, probationers, convicts under mandatory supervision, state or federal prisoners, illicit drug users, substance abusers, or persons engaged in criminal activity; promptly inform your

15

probation officer of any other persons who you are sharing a house or apartment with."

Condition 1.q. is modified to state that defendant shall: "participate and comply with any assessment program regarding substance abuse, anti-theft, or cognitive behavior if directed by the P.O."

We also modify the judgment to stay defendant's sentences on the seven counts of petty theft. The trial court is directed to correct the abstract of judgment to reflect that the sentences on the petty theft counts have been stayed; the trial court is further directed to transmit a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

As modified, the judgment of conviction is affirmed.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.