Filed 4/22/14  P. v. Rampone CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANGELIC LOUISE RAMPONE,<br><br>    Defendant and Appellant. | C067505<br><br>(Super. Ct. No. CRF05699) |

A jury convicted defendant Angelic Louise Rampone on two counts of felony murder based on her participation in a burglary or robbery culminating in two shooting deaths.  The trial court sentenced defendant to 52 years in prison, but suspended imposition of sentence and placed her on supervised probation for 15 years with various terms and conditions.

1

Defendant now contends:

1. There is insufficient evidence to support the convictions because (A) accomplice testimony was not corroborated, and (B) in any event, there is insufficient evidence that defendant had advance knowledge that her friends planned to commit a burglary or robbery.

2. Certain probation requirements were improperly imposed, because (A) the trial court could not give the probation officer discretion to impose new requirements, and (B) a probation term prohibiting defendant from associating "w[ith] persons identified in writing by Probation" is overbroad and violates defendant's freedom of association.

We conclude the accomplice testimony was sufficiently corroborated and that all elements of the felony murder convictions were supported by substantial evidence.

However, we agree with defendant that on this record, the probation department may not require her to seek and maintain employment, and it may not require her to participate in job training, psychological therapy or theft awareness treatment. In addition, it may not require other conditions deemed beneficial to defendant's rehabilitation that were not specified in the trial court's probation orders.

Regarding the probation term prohibiting defendant from associating "w[ith] persons identified in writing by Probation," we will construe that term to prohibit defendant from associating with people that defendant knows were involved with the planning or commission of the instant crimes, or that defendant knows are members of the victims' families.

The judgment is affirmed.

BACKGROUND

Defendant lived with her boyfriend, Michael Huggins, at a house in Antelope. Matthew Griffin and his girlfriend also lived there, and Levill Hill occasionally stayed there. One night in September 2005, defendant drove a small car from the Antelope

2

house, accompanied by Huggins, Griffin, Hill and another man. The group was away from the Antelope house for several hours.

Michael Hance lived in Olivehurst. Due to his medical conditions, Hance used marijuana and had nine marijuana plants growing in his backyard. The street value of the marijuana was well over $100,000.

Hance's son Christopher[1] lived in a travel trailer behind the Hance house with his friend Scott Davis. Hance testified that Christopher was home giving Hance an insulin shot when they heard noises outside at around 3:00 a.m. Christopher and Davis confronted several intruders. After a struggle, Huggins shot and killed Christopher and Davis. The men who had been in the car with defendant were eventually identified as the intruders.[2]

Additional background information will be provided in the discussion as relevant to the contentions on appeal.

DISCUSSION

I

Defendant contends there is insufficient evidence to support the felony murder convictions because (A) accomplice testimony was not corroborated, and (B) in any event, there is insufficient evidence that defendant had advance knowledge that her friends planned to commit a burglary or robbery.

---

[1] Because Michael Hance and Christopher Hance share the same last name, we refer to Christopher by his first name for clarity.

[2] In separate trials, Huggins was convicted of voluntary manslaughter, and Griffin was acquitted. (*People v. Superior Court (Sparks)* (2010) 48 Cal.4th 1, 5.) Charged with murder, Hill pleaded guilty to burglary and agreed to testify against defendant and three other individuals.

A

We begin with defendant's claim that there is insufficient evidence to support the convictions because the accomplice testimony was not corroborated. Penal Code section 1111 precludes a conviction based on accomplice testimony "unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (Pen. Code, § 1111.) The corroborating evidence " 'may be slight, may be entirely circumstantial, and need not be sufficient to establish every element of the charged offense' " as long as it satisfies the jury that the accomplice " 'is telling the truth.' " (*People v. Lewis* (2001) 26 Cal.4th 334, 370.) It must be weighed separately from accomplice testimony and must be enough "to instill trust in the inherently suspect testimony of the accomplice." (*People v. Bowley* (1963) 59 Cal.2d 855, 862, fn. omitted.) The corroborating evidence cannot come from another accomplice. (*People v Davis* (2005) 36 Cal.4th 510, 543.)

Two of the intruders testified for the prosecution, and the trial court identified them as accomplices pursuant to Penal Code section 1111. The accomplices testified that defendant was in the car when the intruders discussed plans to steal marijuana plants from Hance's yard, including the potential use of a gun that the accomplices said Huggins removed from the car's glove box in defendant's presence.

The prosecution also presented evidence corroborating the accomplice testimony, including evidence that the intruders were not at the crime scene when the police arrived, defendant drove the intruders to and from the crime scene in the middle of the night, her fingerprints were in the car with Huggins's fingerprints, she later admitted driving that night,[3] the group left and returned together all dressed in black, defendant shared a

---

[3]  A sheriff's deputy from the Yuba County Jail testified that she heard defendant say she "would not have driven" if she had known what would happen that night and that it might

4

bedroom with Huggins, Huggins's fingerprints were found on a flashlight in Hance's yard, Huggins's DNA was on part of a shirt found in the hand of one of the victims, and defendant later complained that "the masterminds" were "getting off scot free."[4] There was also testimony by Hance and his wife that one of the intruders shined a flashlight at them and shouted words to the effect, "Down to the ground. County Sheriff."

Defendant moved for acquittal on the basis that the corroborating evidence was insufficient. The trial court denied the motion.

On a challenge to the denial of a motion for acquittal, we review the entire record in the light most favorable to the judgment and determine whether there is "substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v Cole* (2004) 33 Cal.4th 1158, 1212.) Unless the evidence corroborating an accomplice's testimony is " ' "either incompetent or is of such character that it could not tend to connect appellant with the commission of the crime and could not reasonably support an inference of such connection, the finding of the jury on that issue cannot be disturbed on appeal. [Citation.]" ' " (*People v. Todd* (1959) 175 Cal.App.2d 508, 523.)

Defendant relies on *People v. Braun* (1939) 31 Cal.App.2d 593 (*Braun*) and *People v. Robinson* (1964) 61 Cal.2d 373 (*Robinson*), two cases in which there was insufficient evidence to corroborate accomplice testimony. Both cases are distinguishable.

---

not have happened if she had not driven because the perpetrators would have had no way to get to the scene.

[4] A custody officer testified that she heard defendant say, several months after the crime, "This is bullshit. The masterminds of this whole damn thing are getting off scot[] free."

In *Braun*, the perpetrators entered a cafe in the afternoon, demanded money from the cafe's owner at gunpoint and eventually killed the owner and wounded another man before leaving with money from the cash register. (*Braun, supra,* 31 Cal.App.2d at p. 596.) The defendant associated with the perpetrators before and after the crime, was present at the crime scene and later accompanied them to Arizona. (*Id.* at pp. 601-602.) Nonetheless, the corroborating evidence was held to be insufficient because it "require[d] recourse to the testimony of the accomplice to give it direction." (*Id.* at p. 602.) Here, unlike in *Braun*, the murders did not occur in a public place during normal business hours, and there is no evidence offering an alternative reason for defendant and the intruders to have been on Hance's property in the middle of the night other than the reason given by the accomplice witnesses: to steal marijuana. Further, by defendant's own admission, she was not just in the company of the perpetrators before and after the crime, she actually drove them to and from the crime scene.

In *Robinson*, three masked men attempted a robbery at a country club. (*Robinson, supra,* 61 Cal.2d. at pp. 378-379.) The evidence corroborating the accomplice testimony included fingerprints on a getaway car and inconsistent statements about one of the defendant's whereabouts near the time of the crime. (*Id.* at pp. 397-398.) The California Supreme Court said the corroborating evidence was insufficient because it merely cast a grave suspicion, and "association with a criminal is not to be equated with connection with the crime." (*Id.* at p. 399.)

If the corroboration in the instant case had been limited to evidence that defendant lived with Huggins and left her fingerprints on a car that she might have used before or after the crime, the holding in *Robinson* indicates such corroboration would be insufficient. But here there was much more. *Robinson* is inapposite.

Based on the evidence other than the accomplice testimony, the jury reasonably could have found that defendant willingly drove her boyfriend and several other men, in the middle of the night, to the immediate vicinity of Hance's home -- a home with

6

$100,000 worth of marijuana growing in the backyard -- and that she waited for them and drove them home again after the crime. A reasonable jury could have concluded from the evidence that the accomplices were telling the truth. There was sufficient corroborating evidence.

B

Defendant also claims there is insufficient evidence she had advance knowledge that her friends planned to commit a burglary or robbery.

Establishing aider and abettor liability requires proof of three elements: (a) the direct perpetrator's crime, (b) the aider and abettor's knowledge of the direct perpetrator's unlawful intent and her intent to assist in achieving it, and (c) the aider and abettor's conduct in furtherance of the crime. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

Because defendant does not dispute that Huggins killed two men during an attempt to steal marijuana, or that she drove him and three accomplices to and from the crime scene, the first and third elements are not at issue. Defendant focuses on the knowledge element, claiming that, even with the accomplice testimony, a reasonable jury could not have concluded that she knew the perpetrators' plan to steal marijuana from the backyard included either breaking into a building or the key element of robbery: the use of force or fear.[5]

Defendant points to a number of inconsistencies in the testimony offered by the accomplices, such as whether Huggins brandished a gun in the car with defendant, and what the perpetrators said in defendant's presence about what they intended to do if

_____

[5] The verdict form included burglary as a possible target crime, but the evidence established that the perpetrators knew the marijuana they sought was growing outside. Huggins struggled with one of the victims in the doorway of a travel trailer, so although a fact finder could have concluded that he committed burglary, no evidence showed that defendant knew about his intent to enter a dwelling. (See Pen. Code, § 459 [burglary defined].) Accordingly, our discussion focuses on the alternative target crime of robbery.

people "[got] in the way" of their plan to steal marijuana.  The accomplices testified that the perpetrators went to Hance's house the night before, but they left when they realized there might be a confrontation with the occupants.  Hill testified that Huggins took a flashlight on the night of the crime because he wanted to pretend he was a cop.  The accomplice testimony was a bit jumbled about various plans to use guns, duct tape or rope and was susceptible to the defense interpretation that there really was no firm plan beyond taking the marijuana.  But given that the group returned to Hance's property with a belief that confrontation was possible, it scarcely matters how solid the plan had been.  Huggins had a gun, and the accomplices agreed he took it from the glove box while defendant sat in the driver's seat.

"Whether a person has aided and abetted in the commission of a crime is a question of fact, and on appeal all conflicts in the evidence and attendant reasonable inferences are resolved in favor of the judgment."  (*In re Juan G.* (2003) 112 Cal.App.4th 1, 5, fn. omitted.)  "Even if we might have made contrary factual findings or drawn different inferences, we are not permitted to reverse the judgment if the circumstances reasonably justify those found by the jury.  It is the jury, not the appellate court, that must be convinced beyond a reasonable doubt.  Our task and responsibility is to determine whether that finding is supported by substantial evidence."  (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

The jury reasonably could have inferred that defendant had advance knowledge that a robbery would occur.  On two consecutive nights, in the middle of the night, she drove a car full of men, all dressed in black, to property that had valuable marijuana plants.  A reasonable jury could have credited testimony that defendant saw the gun, concluding that defendant knew the group intended to subdue occupants of the house with force or fear if it became necessary.  There was sufficient evidence to support the conviction.

## II

In addition, defendant argues certain probation requirements were improperly imposed, because (A) the trial court could not give the probation officer discretion to impose new requirements, and (B) a prohibition against association is overbroad and violates defendant's freedom of association.

The trial court placed defendant on supervised probation for 15 years with various terms and conditions, including that defendant have no contact with Huggins, Griffin, Hill and Griffin's girlfriend. The trial court also orally prohibited defendant from associating "with any person that the Probation Department tells her not to associate with." The terms and conditions of probation did not include a requirement that defendant seek and maintain employment or participate in training, treatment or therapy.

Less than three weeks later, defense counsel wrote to the probation department, pointing out that a recently imposed requirement that defendant seek and maintain full-time employment had not been ordered by the trial court, and that defendant was due to give birth in two months.

The probation department asked the trial court for a modification hearing, saying that the "probation officer noted omissions in the probation conditions that need to be in place to better effectively supervise the defendant." Among other things, the probation department requested adding the following probation terms: that she seek and maintain employment, provide proof of job searches, and participate in job training, theft awareness treatment, and psychological therapy. Defense counsel objected that the trial court had no jurisdiction to modify the probation terms.

At the modification hearing, the prosecutor acknowledged defense counsel's objection and assertion that the trial court lacked jurisdiction, but suggested that defendant had violated her probation by failing to file a financial declaration. The prosecutor said if the trial court lacked jurisdiction to modify the terms of probation, the prosecutor was prepared to proceed on a violation of probation, but if the trial court had

9

jurisdiction to modify the probation terms, they could just do a "do-over" on the probation terms because other mistakes also had been made.

After some discussion, the trial court explained that when it previously ordered defendant to report to the probation department and follow the department's directives, the language was broad enough to encompass many of the concerns raised by the probation department. The trial court said defendant would be required to follow the reasonable directives of the probation department that are beneficial to her rehabilitation, including employment and vocational training. The trial court said it did not previously order psychological therapy or theft awareness treatment, but reasonable directives from the probation department in that regard would be allowed by the trial court's prior general language. The trial court said "the broad language used by the Court actually gives the Probation Department, in my opinion, more authority to do things than if I had specifically enumerated things be done."

A

Defendant now argues the probation terms cannot be construed to give the probation officer discretion to require defendant to seek and maintain employment, to participate in job training, psychological therapy or theft awareness treatment, or to require other conditions deemed beneficial to defendant's rehabilitation. We agree.

Although the trial court can authorize the probation department to supervise probation conditions imposed by the trial court, the probation department cannot independently add probation terms and conditions. (*People v. Kwizera* (2000) 78 Cal.App.4th 1238, 1240.) The trial court did not originally order specific probation terms pertaining to employment, training, therapy or treatment, and the probation department may impose terms only if they are "reasonable and necessary to enable the department to supervise compliance with the specific conditions of probation." (*Ibid.*)

The Attorney General agrees that the challenged terms were new, but claims defendant consented to the terms pertaining to employment and training. We disagree.

10

Although defense counsel did not object to any "monitoring" of defendant's job search and employment status, defense counsel expressly objected to any requirement that defendant find or maintain employment. Our review of the record indicates that although defendant agreed to certain probation modifications, she did not agree to the terms challenged on appeal.

Citing *People v. Welch* (1993) 5 Cal.4th 228, 234, the Attorney General argues defendant forfeited her challenge because she did not adequately object. But the prosecutor acknowledged defendant's objection before and during the modification hearing.

The Attorney General also claims new facts justified modifying the probation terms, because the trial court did not know about contact between defendant and another woman involved in the crime, and that fact warranted terms regarding theft awareness treatment and psychological therapy.

However, that was not a new fact. The prosecutor reported the communication in the trial court two months before sentencing. There was no new evidence justifying modification of the probation terms.

Accordingly, on this record, the probation department may not require defendant to seek and maintain employment, and it may not require her to participate in job training, psychological therapy or theft awareness treatment. In addition, it may not require other conditions deemed beneficial to defendant's rehabilitation that were not specified in the trial court's probation orders.

B

Defendant also challenges a probation term pertaining to association. Among other things, the trial court verbally ordered, "She's also not to associate with any person that the Probation Department tells her not to associate with." The written probation order directed, "Do not associate w[ith] persons identified in writing by Probation." Defendant contends this particular prohibition is overly broad and impermissibly

11

infringes on her First Amendment right to freedom of association. She points out that a similar provision was stricken in *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1359.

The Attorney General urges us to construe the probation term to apply only to the people that defendant knows were involved with the planning or commission of the instant crimes, or that defendant knows are members of the victims' families. Such a construction would limit the probation term to the scope otherwise specifically ordered by the trial court. We adopt the Attorney General's construction. (See *People v. Kwizera, supra*, 78 Cal.App.4th at p. 1240 [discretion of probation department limited to furtherance of court-ordered restrictions].) Defendant shall not associate with people that defendant knows were involved with the planning or commission of the instant crimes, or that defendant knows are members of the victims' families.

### DISPOSITION

The judgment is affirmed. The probation order dated December 21, 2010, is construed to mean that the probation department may not (1) require defendant to seek and maintain employment, (2) require defendant to participate in job training, psychological therapy or theft awareness treatment, or (3) require other conditions deemed beneficial to defendant's rehabilitation that were not specified in the trial court's probation order. In addition, the probation term prohibiting defendant from associating "w[ith] persons identified in writing by Probation" is construed to prohibit defendant from associating with people that defendant knows were involved with the planning or

12

commission of the instant crimes, or that defendant knows are members of the victims' families.

                                                MAURO            , J.

We concur:

          RAYE          , P. J.

          BLEASE        , J.